IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT C. LARRIMER,

      Plaintiff,                                         05cv0228

  v.

PENNSYLVANIA DEPARTMENT
OF PUBLIC WELFARE,

      Defendant.

### Memorandum Opinion

**October 17, 2005**

      This is an action in employment discrimination. Plaintiff, Robert C. Larrimer ("Larrimer") alleges that defendant, Pennsylvania Department of Public Welfare ("DPW") discriminated against him based upon his gender when he was not promoted to the position of director of the western area staff development of the DPW in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq</u>. Plaintiff seeks monetary relief in the form of compensatory and punitive damages. Defendant has filed a motion for summary judgment under Fed.R.Civ.P. 56(c) arguing that plaintiff cannot create a material issue of fact on his claim of reverse gender discrimination. For the reasons that follow, the motion will be granted.

### I. FACTS

    Unless otherwise noted, the following facts, as gleaned from the parties joint statement of material facts, are not in dispute.

    1. This action was initiated by plaintiff, Larrimer, who claims that defendant, DPW discriminated against him based on his gender when a less experienced female was promoted to a position which he had sought.

2. In May of 2004, Larrimer sought promotion to the position of income maintenance staff development manager, or as it was also known, director of western area staff development. It is a supervisory and administrative position which is "responsible for directing the implementation, coordination, and evaluation of staff development programs in an assigned geographic area of the state."

3. Harry Felice ("Felice") has been the director of the division of staff development since approximately 1999; he had previously held the position of director, southeast area staff development.

4. Felice has six area directors who report to him. Of the six area directors, two are men and four are women. The two male area managers have held their positions since before Felice became the division director.

5. All four female area managers, including Linda Toy ("Toy") were promoted since 1998. Because these positions reported directly to Felice, he convened the panels and participated in the interviews for all of these area managers.

6. The final ranking sheets for the area manager promotions of Patricia Dills ("Dills") (in the northeast) and Evelynn Showell ("Showell") (in the Southeast) were purged from the divisional files and thus were not available for disclosure. However, based on Felice's recollections, Dills was promoted on July 26, 2002, she was selected over one other qualified male candidate and the promotion panel was composed of Felice and Timothy Philamac. Showell was promoted in May of 1998, she was selected over one other qualified female candidate and the promotion panel was composed of Felice and Georgine Beyer.

7.  Currently, of the 24 staff development specialists in the area offices, there are 14 women and 10 men, including Larrimer.

### *DPW's Selection Process for Hiring and Promotions*

8.  The DPW utilizes a hiring/promotion process that consists of the following general steps:

(a)  A position announcement is advertised and/or posted listing necessary information about a particular job along with deadlines for response.  All interested applicants are asked to submit a resume, which is then reviewed by the personnel office.

(b) Once the qualified candidates are identified, these candidates are scheduled for individual interviews in front of a selection panel - which is compised of two to three people, preferrably of mixed races and genders.

(c)  The person to whom the selected employee will report forms the panel and all interviews are conducted at the same time.

(d)  A list of questions specific to the open position is developed for use at the interviews. The questions may also contain a list of factors to be considered by the panel when scoring the answers to the questions.  Some panels permit the candidates to view the questions a few minutes before the interview begins, otherwise the candidates go into the interview "cold."  The questions are asked "in rotation;" once a question is asked, there is no further questioning by, discussion of, or follow-up from the panelists.

(e) The candidate's response to each question is scored by each interviewer individually on a scale of 1 to 10. At the end of each of the interviews, each panelist adds together each candidate's individual answer scores to obtain that candidate's score; at the conclusion of each

candidate's interview the panelists may discuss the candidate's responses.

(f) The panelists' score sheets are then tabulated and the candidates are ranked from highest to lower based on their cumulative scores. The highest ranked candidate is then offered the position, unless there are two or three closely rated candidates, in which case, the panel may discuss other factors.

(g) The position is offered to the candidate with highest score on the interview and the candidate's personal recommendations, resume, and length of service are not considered.

### *Larrimer's Employment History*

9. Larrimer has been employed by the DPW for almost 30 years. He has held the positions of caseworker, supervisor of training, and staff development specialist. He began his employment with DPW in the Cambria County office and was transferred to western area staff development in the Pittsburgh office in 1991.

### *The Promotion for Director of West Area Staff Development*

10. As a staff development specialist working in the Pittsburgh office, Larrimer's supervisor was Patrick DeCaprio, and DeCaprio's supervisor was Felice. In 2004, DeCaprio retired and his position became open.

11. On May 12, 2004, the position of director of western area staff was posted. Larrimer and four others, two men (Ralph Hegner and Andrew McLaren) and two women (Mary Ann Grzes and Linda Toy) submitted applications for the position and were deemed "qualified" by the personnel office. All five candidates were scheduled to be interviewed on July 1, 2004.

12. Because the new position would report to Felice, he was responsible for coordinating the interview panel. He selected himself and two other executive directors, Sandra Fraser

(Beaver) and John Vagias (Butler) to serve on the panel.

13. Consistent with DPW policy, Felice prepared the questions for the interviews and the candidates were each given 15 minutes to review the questions before their interviews.

14. The panelists, who asked the interviewees 7 questions, took notes of each candidate's response and filled out their score sheets.

15. Again, consistent with DPW policy, at the end of the interviews, the panelists' scores were tabulated and ranked highest to lowest. Each panelist had Toy as the highest ranked candidate and two panelists ranked Larrimer as the lowest candidate and the other panelist ranked him fourth out of five.

16. Toy (female) was ranked first, Hengner (male) was ranked second, McLaren (male) was ranked third, Grzes (female) was ranked fourth, and Larrimer was ranked fifth. The panel selected Toy for the promotion and she assumed the position of director of western area staff development.

17. Felice personally informed Larrimer in July of 2004 that he was not selected for the position and that Toy was selected. He stated to Larrimer, "trust me, she interviewed better."

18. The three panelists who were deposed in this matter all indicated that Toy had performed the best of all the interviewees, and that Larrimer had not performed well compared to the others. All three indicated that this was a very fair process and comported in all respects with the policies established by the DPW.

19. Other than expressed concerns about the potential bias of the panelists based on prior associations with some of the candidates and the subjective nature of the process, Larrimer did not feel that the selection process was not outwardly followed in this case. At his deposition,

Larrimer could not point to any specific evidence to suggest that Felice, Fraser and Vagias did not score the candidate interviews in this case in a fair and unbiased manner.

20. Felice testified that Toy was clear, articulate, enthusiastic, showed leadership skills, answered questions decisively, and showed problem solving skills. Felice categorized Larrimer's performance as the poorest of the five and stated that his answers were vague and nonspecific.

21. Fraser testified that Toy's selection was fairly clear cut and that there were not two or three candidates who were so close that the panel had to debate the issue. Fraser was also impressed by Toy's performance at the interview, citing her confidence level, and the clarity of her communication. Conversely, Fraser stated that Larrimer "had not given us al that he was. There were answers like 'I have been doing this job for so many years,' but not details of what was done in that job. There was not enough detail of his skills and his skill set."

22. Vagias similarly testified that Larrimer's performance at the interview did not measure up to Toy's, that Toy did much better at relating her experiences, her education, and her background to the role of director and that there was a 23 point differential between Toy and the number two candidate (Hegner). Nonetheless, Vagias did testify that Felice "was running the show."

23. The panelists indicated that they were not subjected to any outside influences or otherwise pressured to make any particular selection. Fraser and Vagias testified that Felice had not indicated his preference for the position and had not exerted any influence over them either prior to or during the interviews, or afterwards during the scoring and tabulation of the results.

24. In a letter dated July 23, 2004, Larrimer complained to the DPW's Bureau of Equal Opportunity that Toy was selected because her husband was also an executive director in another

Western Pennsylvania county.  The Bureau of Equal Opportunity informed Larrimer that he did not have jurisdiction over this type of complaint, Larrimer then wrote a letter to the secretary of the DPW and attached his prior correspondence to the Bureau of Equal Opportunity.  These letters contain no claim that Toy was selected because of her gender or that Larrimer was not selected because of his gender.

25. After pursing his administrative remedies, plaintiff filed the instant suit.

26. As of the date that Felice learned that Larrimer had filed a complaint with the EEOC, Felice had never served on a panel which hired or promoted a man for a position working directly under Felice.  Since 1998 to the date of filing on the EEOC complaint, there were eight open positions under Felice and Felice hired 8 women and no men.

27. Larrimer testified that he heard from Felice's secretary that Toy was given the promotion based on her gender.  Further, Larrimer testified that: he heard from Patrick DeCaprio (a retired income maintenance staff development manager) that Felice "had his eye on Toy," that Clark Bryant (current staff development specialist) told him that Felice told Bryant that he was not going to fill another position until a woman, Linda Perry, met the qualifications for that job and that Bryant told him that Felice made a negative comment about a male candidate's ponytail while on an interview panel for another position.

28. In his affidavit, DeCaprio stated that he believes that Felice always chooses candidates who are flashy women, who make a good appearance.

29. According to DeCaprio and Bryant, there have been numerous rumors that the DPW preselects who it wants to hire or promote prior to the interview.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In considering a motion for summary judgment, we must examine the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The moving party bears the initial burden of identifying the basis of the motion and the evidence which demonstrates the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.

In order to avoid summary judgment, the burden shifts to the non-moving party to produce evidence that a reasonable fact-finder could find for that party.  Anderson, 477 U.S. at 248-249.  The non-moving party must go beyond the pleadings and produce evidence through affidavits, depositions or admissions to show that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  When considering the reasonable fact-finder rule, the court must apply the evidentiary standard which governs at trial.  Anderson, 477 U.S. at 252.  Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## III.  DISCUSSION

Plaintiff claims that he was not promoted because of his gender and bases his claim upon a theory of disparate treatment.[1]  In analyzing a claim for failure to promote on the basis of

---

[1] The disparate treatment theory differs from disparate impact in that the former is directed to the discriminatory motive underlying the 'treatment' of minorities, whereas the latter focuses upon the 'outcome' regardless of how benign the motive underlying the treatment of minorities

8

gender under Title VII, we apply the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this scheme: (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 802; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-508 (1993).

To establish a prima facie case of gender discrimination in a failure to hire/promote context, a plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for a position for which the employer was seeking applicants; (3) despite his qualifications he was rejected; and (4) after plaintiff was rejected, defendant continued to seek applications from individuals with plaintiff's qualifications. Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997)(citing McDonnell Douglas, 411 U.S. at 802). Additionally, plaintiff must show that another similarly-situated individual from a non-protected class was promoted instead of him. Moss v. Koolvent Aluminum Products, Inc., 962 F.Supp. 657, 669 (W.D.Pa. 1997). Even though plaintiff, as a male, was not a member of a protected class, the standard for establishing a prima facie case of reverse discrimination is the same as the standard in any other case where an individual alleges discrimination. Iadimarco v. Runyon, 190 F.3d 151, 160-161(3d Cir. 1999).

Although the parties dispute and this Court has serious doubts that Larrimer has

---

might have been. Wilmore v. Wilmington Firefighters Local 1590, 699 F.2d 667, 671 (3d Cir. 1983).

established a prima facie case of the reverse gender discrimination, the Court will assume for the sake of argument that he has.  As such, the burden shifts to defendant to proffer a legitimate, nondiscriminatory reason for failing to promote plaintiff.  See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)(citing McDonnell Douglas, 411 U.S. at 802).

Defendant asserts that Larrimer was not promoted because, out of five applicants, he obtained the lowest score during the interview process, and that the promotion was awarded to Toy, because she achieved the highest score during this process.    This Court finds that defendant has proffered legitimate, nondiscriminatory reasons for failing to promote Larrimer.

Thus, under the final prong of the McDonnell Douglas analysis, the burden shifts to Larrimer to produce sufficient evidence to withstand summary judgment on the issue of pretext. See McDonnell Douglass, 411 U.S. at 802.  Larrimer must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve defendant's articulated legitimate reasons or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of defendant's action.  See Fuentes, 32 F.3d at 764; Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 523 (3d Cir. 1992)(citation omitted).  In other words, Larrimer must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's proffered legitimate reasons such that a "reasonable fact-finder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reasons did not actually motivate" defendant's action. Fuentes, 32 F.3d at 764-765 (quoting Ezold, 983 F.2d at 531).

Most recently, in Kautz v. Met-Pro Corporation, 412 F.3d 463, 467 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit further explained that:

> [P]retext is not shown by evidence that 'the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.'

Id. (quoting Fuentes at 765).

In support of his pretext argument, Larrimer first contends that Felice was unable to explain why Toy was given higher scores than his answers because his notes of the responses looked similar. However, notwithstanding defendant's reply that plaintiff mischaracterizes Felice's testimony, the Court recognizes that the testimony of all the panelists that Larrimer's performance at the interview was not nearly as strong as Toy's. The combined testimony of the panelists as to Larrimer's inadequacy in this regard, in addition to the fact that the panelists engaged in a diligent and uniform method of ranking the answers and assigning point value, is sufficient to overcome any alleged incoherencies in Felice's memory as to his reasons for certain scores.

Larrimer next contends that the testimony of DeCaprio that he believes Felice chose candidates who were flashy women and that rumors "abounded" that candidates for open positions were chosen prior to the interviews is evidence of pretext. This Court finds that these statements are conclusory and are not supported by specific examples and therefore fail to create a genuine issue of fact on pretext. See Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985)(conclusory statements in affidavits unsupported by specific examples fail to create genuine issue of fact). And, as for DeCaprio's testimony that Felice had commented that "Ms. Toy is

going to go places," said comment in no way suggests a bias in favor or her or any other female, rather it reflects Felice's opinion that she was a good employee.

Larrimer further alleges that Bryant's testimony that he heard that Daphne Martens had not applied for a position because Felice had told her that another woman would be selected for the position is evidence of pretext. However, this evidence is inadmissible hearsay, and even if it were admissible, it does nothing to support plaintiff's argument regarding pretext.

Larrimer next alleges that Bryant testified that Felice said he was not going to fill an open position until a woman became qualified for the position supports his pretext argument. In his deposition, Bryant testified that Felice "said that he was going to leave the position open until a new person got enough experience to be director because he didn't feel that the people that were there could do the job." (Plaintiff's Exhibit 11, page 30-31). This testimony does nothing to advance plaintiff's argument on pretext.

Finally, the fact that Felice had hired only women to positions reporting directly to him, while admissible, without more, is not ordinarily dispositive. Healy v. New York Life Insurance Co., 860 F.2d 1209, 1218 (3d Cir. 1988)("statistical evidence can be probative if cautiously and critically applied, but it cannot end our inquiry"). *See also*, Abrams v. Lightolier Inc., 50 F.3d 1204, 1217 (3d Cir. 1995)("Although a plaintiff in a disparate treatment case is not precluded from introducing statistical evidence as circumstantial evidence of discrimination, it is ordinarily not dispositive."). In Castillo v. American Board of Surgery, 221 F.Supp. 2d 564, 569-570 (E.D. Pa. 2002), the Court observed that in *individual* disparate treatment cases, statistical evidence is less significant because the ultimate issue is whether the particular plaintiff was the victim of an illegitimately motivated employment decision.

In this case, plaintiff has submitted no evidence to support the inference that this statistical disparity was the result of discrimination. The fact that four women have been promoted during Felice's tenure, without more, does not establish that defendant treated men less favorably than women. On the contrary, the evidence submitted regarding DPW's hiring and promotion policy helps to ensure that no one person makes employment decisions, and every panel member stated that Felice said or did nothing to suggest any bias in favor women generally, or Toy specifically.

The Court finds that Larrimer has failed to satisfy his burden. Larrimer has failed to produce evidence of discrimination or that defendant's tendered reason for its decision not to promote Larrimer is not worthy of credence. He has neither alleged, nor has he shown that Toy was not qualified for the position (or that he was more qualified than Toy). Furthermore, he has not produced any evidence that the candidate interviews were administered arbitrarily, that the interview process was a pretense, or that the selection process was skewed. On the contrary, the facts as elicited (and agreed to by the parties) during the depositions of the panelists refutes any suggestion that the selection process was not appropriately conducted. While the Court has carefully considered the statistical evidence of Felice's promotion of women, that fact, in and of itself, and without other competent evidence, is not sufficient evidence of pretext.

Thus, the Court concludes that a reasonable juror could not find Larrimer's pretext arguments worthy of credence. Viewing the facts in the light most favorable to Larrimer, he has failed to establish sufficient evidence from which a reasonable fact-finder could rationally find that the defendant's articulated reasons for its employment action were unworthy of credence, or that the decision not to promote Larrimer was motivated by his gender. Where a plaintiff is

unable to show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in defendant's reasons for its action, summary judgment is required.  <u>Fuentes</u>, 32 F.3d at 756.  For these reasons, defendant's motion for summary judgment will be granted.  An appropriate order follows.

                                                    <u>s/Arthur J. Schwab</u>
                                                    Arthur J. Schwab
                                                    United States District Judge


cc:   All counsel of record as listed below

David B. Spear, Esquire
Markel, Schafer & Goldman
2200 Lawyers Building
Pittsburgh, PA 15219

Scott Bradley, Deputy Attorney General
Office of the Attorney General
564 Forbes Avenue, 6th Floor
Manor Complex
Pittsburgh, PA 15219